**DISTRICT OF COLUMBIA, Appellant and Cross–Appellee,**

v.

**Terrie PATTERSON, et al., Appellees and Cross–Appellants.**

**Nos. 93–CV–835, 93–CV–874.**

District of Columbia Court of Appeals.

Argued Feb. 23, 1995.

Decided Nov. 30, 1995.

---

James C. McKay, Jr., Assistant Corporation Counsel, with whom Vanessa Ruiz, Acting Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, was on the brief, for appellant and cross-appellee.

Landon Gerald Dowdey, with whom Brenda Grantland, Washington, DC, was on the brief, for appellees and cross-appellants.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

At issue in this appeal and cross-appeal is the trial court's award of attorney's fees to the plaintiffs in actions filed against the District of Columbia invoking 42 U.S.C. § 1983. The plaintiffs sought to recover property seized by the District pursuant to statutes authorizing the forfeiture of property used in connection with certain drug activities. The actions, inter alia, challenged the constitutionality of the statutes under both the Fourth and Fifth Amendments. Collectively, the actions set forth thirteen different alleged constitutional violations presented by the statutory scheme both on its face and as applied.

Only one of these constitutional claims was sustained by the trial court. The sustained claim was that the claimants had a post-seizure right to a probable cause determination on request. However, only one of the claimants, Patterson, requested such a hearing, at which the court found that in fact probable cause existed for the seizure.

The District on the direct appeal argues that the trial court erred, first, when it found

appellant Patterson to be a prevailing party, because she had only received an interim ruling entitling her to a hearing at which she ultimately lost on the merits, and, second, when it enhanced the attorney's fee award based on the contingency fee arrangement between plaintiffs and their attorneys. We agree with the District on these two issues.

Plaintiffs[1] in the cross-appeal first argue that the trial court erred when it assumed that the plaintiffs had prevailed only on their Fourth Amendment claims. Second, plaintiffs argue that even if they had not prevailed on their other constitutional claims, such claims were "related to" the successful claims and therefore the trial court erred in reducing the fee award to exclude hours spent on the unsuccessful claims. Third, plaintiffs argue that they were entitled to an enhancement for the extended delay in payment. The second and third arguments were not properly preserved below for appeal. With respect to the first argument, we are unable to determine the degree, if any, to which the trial court's award of fees encompassed not only the Fourth Amendment claims, on which the trial court erroneously concluded plaintiffs had prevailed, but also other constitutional claims on which the plaintiffs claim to have prevailed.

We remand for a redetermination of an award of attorney's fees consistent with this opinion.

## I.

In 1987, Terrie Patterson filed a complaint which, after several amendments, challenged the constitutionality of D.C.Code § 33–552.[2] In particular, the complaint, based in this regard on 42 U.S.C. § 1983,[3] alleged that the statute violated the Fourth, Fifth, Sixth and Eighth Amendments. She sought to recover possession of her seized car pursuant to the terms of the statute barring such seizures as against innocent owners, and to recover damages for loss of use, property damages and consequential damages.

Patterson later moved for a class certification, which was denied. Several consolidated claims[4] and parties were added to this action; they involved individual claims on behalf of the other plaintiffs regarding seizures of their cars under D.C.Code § 33–552(a)(4), or seizures of cash under D.C.Code § 33–552(a)(6).[5]

In an amended order dated January 6, 1989, *Patterson v. District of Columbia,* 117 Daily Wash.L.Rptr. 741 (D.C.Super.Ct.1989), the trial court held that § 33–552 did not, on its face, violate the Fifth Amendment's Due Process Clause or the Sixth or Eighth Amendments. The court noted, however, that the statute did not provide for a prompt post-seizure procedure. In particular, once the property was seized, no process was is-

---

1. Because there is a cross-appeal, in order to avoid confusion, we will refer to Patterson *et al.* as "plaintiffs" rather than "appellees."

2. This provision makes certain items subject to forfeiture, including "[a]ll conveyances, including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner facilitate the transportation" of any controlled substance or property used to manufacture such substances, D.C.Code § 33–552(a)(4), and "[a]ll cash or currency which has been used, or intended for use, in violation of this chapter," *id.* § 33–552(a)(6). Patterson's car had been seized because a person to whom she had lent the car had used it to transport cocaine.

3. Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
 42 U.S.C. § 1983 (1988).

4. These actions included the forfeiture actions brought by the District against the property of some of the plaintiffs in the Patterson suit. By an order of February 24, 1989, all the forfeiture actions were severed from the claims brought in the Patterson suit against the District.

5. Cash seizures based on the gambling laws, D.C.Code § 22–1505(c), and the validity of the property clerk statute, D.C.Code § 4–153, were also challenged. No issues are raised on appeal with respect to those claims.

sued or filed during the time that Corporation Counsel decided whether to institute a forfeiture proceeding. If Corporation Counsel decided to pursue forfeiture, a libel of information was filed in Superior Court, and the case proceeded under the Superior Court Rules of Civil Procedure. Hence, property could possibly be held for up to two years without a judicial hearing in which an owner could present defenses, such as a lack of knowledge of the use of the property for an illegal purpose. *See* D.C.Code § 33–552(a)(4).[6] Accordingly, the trial court held that under the Fourth Amendment, "claimants from whom property has been seized have a right to a probable cause determination, post-seizure at their request." On May 12, 1989, Patterson moved for such a hearing.[7] A hearing was held on December 21, 1989, at which the court found that there was indeed probable cause for the seizure.

The court order of January 6, 1989, however, did not address the claims that the procedures employed did not provide adequate pre- and post-seizure notices assertedly required by the Fifth Amendment. These claims had been the subject of a summary judgment motion filed by plaintiffs Morris Hinton and Lennox Layne, which was never acted upon. In the spring of 1992, a settlement was reached respecting these claims of inadequate notice.[8]

In November of 1992, the trial court issued its first order relating to attorney's fees.[9] The order held that the plaintiffs were prevailing parties in the litigation, and thus entitled to fees under 42 U.S.C. § 1988 (1988 & Supp. V 1993).[10] The court held that the plaintiffs had prevailed on their Fourth Amendment claims because the "declaratory judgment requiring a probable cause hearing

prior to forfeiture was a judgment in petitioners' favor and affected the conduct between these parties." Furthermore, the court, citing *District of Columbia v. Jerry M.*, 580 A.2d 1270 (D.C.1990), held that the parties who had settled their claims were also prevailing parties. Therefore, counsel were ordered to submit the fees and costs "incurred as a result of litigating the constitutional portions of plaintiffs' cases." The plaintiffs' subsequent submission of attorney's fees sought $76,290[11] for Brenda Grantland (610.3 hours at $125 per hour), and $22,540 for Landon Dowdey (128.8 hours at $175 per hour).[12]

In an order dated May 19, 1993, the trial court awarded Grantland $26,623.03 and Dowdey $7,513 in fees. The court began with the total number of hours claimed for each attorney and then reduced that figure by one-half "to more accurately reflect the hours spent on the Fourth Amendment issues," and to exclude those hours spent on other aspects of the litigation. The court recited the experience of each of the attorneys, and found their rates "to be within the range charged by others performing similar services." Therefore, the court arrived at "lodestar" figures by multiplying half of the hours claimed by the hourly rate: $38,145 for Grantland and $11,270 for Dowdey.

The court noted that the hourly rates in the fee petition were the attorneys' rates for non-contingent matters; however, "[b]oth fee arrangements were in fact contingent [and] this is a factor to consider in raising or lowering the lodestar factor." The court held that a "pro rata reduction [based on the ratio of one successful claim to the total

---

**6.** That subsection in general excludes forfeiture of a conveyance if the illegal action was committed without the knowledge or consent of the owner or secured party.

**7.** Apparently, none of the other plaintiffs requested a probable cause determination.

**8.** It is not clear from the present record whether Hinton and Layne alone or other plaintiffs as well were parties to the settlement.

**9.** No challenge is made to the proposition that the litigation by then was final in all respects.

**10.** The details of that statutory provision providing for the award of attorney's fees in § 1983 actions are set forth in Part II of this opinion.

**11.** Grantland's submission included an additional $1,193.03 in expenses.

**12.** Grantland and Dowdey represented all of the plaintiffs in the consolidated action, and the attorney's fee award was in a lump sum.

thirteen claims brought [13]] of the lodestar [would be] wholly inappropriate" in light of the "uncertainty of compensation" because of the contingency arrangement. The court then found that "a partial reduction to reflect the proportion of favorable outcome of the total litigation is justified, and the court determines that factor to be one-third." The court also allowed all the claimed expenses of Grantland, which totalled $1,193.03. Accordingly, the court ordered an award of $25,-623.03 to Grantland and $7,513 to Dowdey.

## II.

■ We first review the federal statutory scheme at issue here, upon which any right to attorney's fees must be based. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc.,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) ("absent statute or enforceable contract, litigants pay their own attorneys' fees"). Under 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1988 & Supp. V 1993).[14] In awarding the fee, the trial court must first determine whether the claimant is a "prevailing party" within the meaning of the statute. *See Hewitt v. Helms,* 482 U.S. 755, 759, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987). If the claimant qualifies as a "prevailing party," the trial court must next arrive at a "reasonable fee." *Henderson v. District of Columbia,* 493 A.2d 982, 999 (D.C.1985). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied

by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This amount is often referred to as the "lodestar" amount. *Henderson, supra,* 493 A.2d at 999.

■ In arriving at the total hours reasonably expended, "hours that are 'excessive, redundant or otherwise unnecessary' must be excluded." *Id.* at 999 (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939). The reasonable rate is "to be calculated according to the prevailing rates in the relevant community." *Id.* Once the court calculates the lodestar, this sum is " 'presumed to be the reasonable fee' to which counsel is entitled." *Delaware Valley, supra* note 14, 478 U.S. at 564, 106 S.Ct. at 3097 (quoting *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984)) (emphasis omitted). Upward adjustments to the lodestar are permissible "only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts," *id.* at 565, 106 S.Ct. at 3098 (quoting *Blum,* 465 U.S. at 898–901, 104 S.Ct. at 1548–50), and only to the extent that these factors were not already considered in calculating the lodestar amount, *see Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–49. We turn now to the application of these principles to the case before us.

## III.

We turn first to the two principal arguments of the District addressing alleged trial court errors that caused the fee award to be too high.[15]

---

**13.** The trial court was here apparently amassing all issues raised by the plaintiffs collectively.

**14.** The Supreme Court has routinely held that cases interpreting a fee shifting provision of one federal statute will apply equally to similar provisions. *See, e.g., City of Burlington v. Dague,* 505 U.S. 557, 561, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992) (Safe Water Drinking Act and the Clean Water Act fee provisions are "similar to that of many other federal fee-shifting statutes," including 42 U.S.C. § 1988; "case law construing what is a 'reasonable' fee applies uniformly to all of them"); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 560,

106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986) (§ 1988 and fee shifting provision of the Clean Air Act to be interpreted similarly). Supreme Court interpretations of general federal statutes are, of course, binding on all courts, state or federal. *See, e.g., United States v. Gilbert Associates,* 345 U.S. 361, 363, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953).

**15.** The District also argues that the fees were improperly documented. In response to the same argument before it, the trial court did not question the adequacy of the documentation, and we see no reason to disturb the trial court's action in that regard.

## A.

First, the District argues that Patterson was not a "prevailing party" within the meaning of section 1988, and thus was not entitled to an award of any attorney's fees at all under that provision. The Supreme Court has, in several cases, defined who qualifies as a "prevailing party" under § 1988. In *Hanrahan v. Hampton*, the Court reviewed the history of § 1988, and noted that Congress contemplated that success on some kinds of interim relief might warrant an award of fees. 446 U.S. 754, 756–57, 100 S.Ct. 1987, 1988–89, 64 L.Ed.2d 670 (1980) (per curiam) ("a person may in some circumstances be a 'prevailing party' without having obtained a favorable 'final judgment following a full trial on the merits.'" (quoting H.R.Rep. No. 94–1558, p. 7 (1976))). However, the Court cautioned that fees for interlocutory relief was limited: "it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Id.* at 757, 100 S.Ct. at 1989.

Accordingly, in *Hewitt, supra,* the Court held that an interlocutory ruling holding that the plaintiff's complaint should not have been dismissed for failure to state a claim was not a sufficient legal victory to establish prevailing party status for the plaintiff. 482 U.S. at 760, 107 S.Ct. at 2675. The Court explained:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*

*Id.* at 761, 107 S.Ct. at 2676 (emphasis in original). Accordingly, a mere "favorable judicial statement of law in the course of litigation" does not render a plaintiff a prevailing party in an action which is otherwise decided against him. *Id.* at 763, 107 S.Ct. at 2677. The Court held that the plaintiff could not be a prevailing party even if voluntary changes in prison regulations made by the defendant had been a result of the lawsuit, because the plaintiff had been released from prison by the time the changes were made, even though the plaintiff had subsequently been once again imprisoned. *Id.* at 763–64, 107 S.Ct. at 2677 ("Although he has subsequently been returned to prison, and is presumably now benefiting from the new procedures ... that fortuity can hardly render him, retroactively, a 'prevailing party' in this lawsuit"); *see also Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 203, 102 L.Ed.2d 1 (1988) (per curiam) (Court denied an award of attorney's fees in a suit brought by two prisoners alleging the unconstitutionality of a prison regulation prohibiting prisoners from subscribing to magazines when one prisoner had died and the other had been released before the district court had ruled in their favor).

In *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* the Court once again emphasized that "[a] prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). The Court noted that "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Id.* at 791–92, 109 S.Ct. at 1493 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). With respect to a partial success, the court held that where the party had obtained a "material alteration of the legal relationship of the parties," the "degree of the plaintiff's overall success goes to the reasonableness of the award ... not to the availability of a fee award *vel non.*" *Id.* at 792–93, 109 S.Ct. at 1493–94.

More recently, in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court summarized:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Id.* at 111–12, 113 S.Ct. at 573.

This court has also addressed the prevailing party issue. In *Henderson, supra,* this court held that a party is prevailing "if he has succeeded on any of the significant issues in the litigation which achieved some of the benefits sought by bringing the suit." 493 A.2d at 999. In *District of Columbia v. Jerry M.,* this court noted that a party is prevailing "if he or she succeeds in obtaining relief by way of a settlement agreement or consent decree." 580 A.2d 1270, 1274 (D.C. 1990); *see also Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).

In analyzing the situation here, it is important to bear in mind what Patterson's law suit ultimately sought; *viz.,* the return of the car that had been seized under the authority of D.C.Code § 33–552 and damages for its detention. The constitutional claims were only mechanisms to that end. To be a prevailing party, Patterson had to demonstrate that the constitutional infirmity that she established resulted in some tangible benefit to her with respect to the litigation. The only constitutional infirmity that the trial court found was the District's failure to provide her a post-seizure hearing to establish probable cause. The fatal flaw in her argument, we think, is that when she got the hearing she sought, the trial court found that probable cause indeed did exist, and thus she obtained no benefit whatever from her proof of a constitutional violation.

Plaintiffs invoke the trial court's view expressed in the order allowing attorney's fees that the "declaratory judgment requiring a probable cause hearing prior to forfeiture was a judgment in petitioners' favor and affected the conduct between these parties." But that order was an interim legal ruling that Patterson, like other claimants, had a constitutional right to a probable cause determination post-seizure on request. Each party still had to pursue its own further specific challenge because of "the particular nature of the determination in each case." Class certification was expressly denied. *See Rhodes, supra,* 488 U.S. at 4, 109 S.Ct. at 203 ("The lawsuit was not brought as a class action, but by two plaintiffs.") No injunction was issued. *See Hewitt, supra,* 482 U.S. at 760, 107 S.Ct. at 2675.

Patterson argues that in any event, the trial court ruling "affect[ed] the behavior of the defendant towards the plaintiff" and constituted a "material alteration of the legal relationship of the parties," in that she obtained the probable cause hearing that she wished. We think this misconstrues the meaning of those phrases in *Hewitt* and *Texas State Teachers.* What plaintiff obtained was specific action with respect to this particular litigation, a normal outcome of an interim trial court ruling. To constitute the change of behavior or legal relationship necessary to make plaintiff a prevailing party, the litigation would have to effect a future course of conduct toward the particular plaintiff apart from the litigation itself. As the Court explained in *Farrar,* what is required is an outcome that "directly benefits the plaintiff." The possibility that a plaintiff's property might once again be impounded cannot suffice any more than it did in *Hewitt.*

In sum, we think that Patterson's failure to achieve any tangible benefit as a result of the trial court's ruling on the constitutional issue negates the status of "prevailing party" for purposes of an attorney's fee award.[16]

---

16. A fortiori, the other plaintiffs, who did not even seek a probable cause hearing, see note 7, *supra,* must lack that status. The District on appeal contends that the attorney's fee award applied only to Patterson. Even a superficial reading of the attorney's fees petition, together with the trial court's order, demonstrates that the award applied to all the plaintiffs. In particular, Grantland's petition specifically mentions eight other plaintiffs, in addition to Patterson.

**B.**

 Second, the District argues that, in any event, the trial court improperly enhanced the award based on the contingent fee arrangement under which the attorneys represented the plaintiffs.[17] The District relies on *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), for the proposition that an enhancement for a contingency arrangement is not permitted in an attorney's fees award under section 1988. In *Burlington*, the Court addressed the issue of the propriety of an enhancement of the lodestar amount to reflect a contingent fee arrangement. The Court first noted "[w]e have established a 'strong presumption' that the lodestar represents the 'reasonable fee.' " *Id.* at 561, 112 S.Ct. at 2641. Accordingly, "the fee applicant who seeks more than that [has] the burden of showing that 'such adjustment is *necessary* to the determination of a reasonable fee.' " *Id.* (quoting *Blum, supra*, 465 U.S. at 898, 104 S.Ct. at 1548) (emphasis added in *Burlington* ).

 The Court held that the contingent nature of a fee arrangement was an improper consideration in determining the lodestar amount:

> The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so.... The first factor ... is not reflected in the lodestar, but there are good reasons why it should play no part in the calculation of the award. It is, of course, a factor that *always* exists (no

claim has a 100% chance of success), so that computation of the lodestar would never end the court's inquiry in contingent-fee cases.

*Id.* at 561, 112 S.Ct. at 2641.

Accordingly, the Court held "that enhancement for contingency is not permitted under the fee-shifting statutes at issue." *Id.* at 565–67, 112 S.Ct. at 2643–44. Because we are interpreting a federal statute, *Burlington* is controlling.

In the case *sub judice*, the trial court reasoned that the contingency nature of the fee agreement was "a factor to consider in raising or lowering the lodestar [amount], but [wa]s not a basis for setting the rate." Because of the contingency arrangement, the trial court found that a pro rata reduction was inappropriate, and instead reduced the fee by one-third. Plaintiffs therefore argue that the trial court did not in fact award any enhancement, but rather declined to further reduce the award because of the contingency arrangement. We discern no difference between awarding an enhancement and declining to further decrease an award if such a reduction would otherwise be warranted; in either case, the contingent nature of the fee arrangement is treated as a factor, now barred by *Burlington.*

**IV.**

 We turn next to the principal arguments of the plaintiffs addressing alleged trial court errors that caused the fee award to be too low.[18] As will be seen, we conclude that notwithstanding the plaintiffs' failure to establish that they were "prevailing parties" with respect to the Fourth Amendment claim, we must remand for further consideration of the possibility that plaintiffs could

---

**17.** We address this issue, notwithstanding the holding with respect to the absence of "prevailing party" status on the Fourth Amendment claim, because, as will be seen, plaintiffs prevail in part on their cross-appeal, requiring further consideration of the attorney's fee issue.

**18.** In their reply brief as appellants, plaintiffs also argue that the trial court erred when it reduced the fee twice based in effect on the same factor; *viz.*, the results obtained. However, an

argument first raised in a reply brief comes too late for appellate consideration. *See Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 95 n. 34 (D.C.1994) ("This [new] issue should have been raised in appellant's initial brief, and it is not properly included in the reply brief."); *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990) ("All arguments for reversal must appear in the opening brief, so that the appellee may address them.").

establish such status with respect to certain other of their constitutional claims.

## A.

Plaintiffs argue that the trial court erred in assuming that the Fourth Amendment issue, that of a right to a post-seizure probable cause hearing, was the only claim on which plaintiffs prevailed. They direct our attention to two other areas.

■ First, they assert that they were prevailing parties on claims decided in 1987 under the Takings Clause of the Fifth Amendment. They cite to two places in the record as support for this assertion. However, at these cites we can find no mention of a takings issue, much less an indication of a successful Fifth Amendment claim. The first cite is an order consolidating several cases, granting the District's motion for an enlargement of time, and scheduling oral arguments. The second cite is to the second page of an order granting an enlargement of time.

■ The District noticed this problem, and argued that this argument must therefore fail under *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982), placing responsibility upon the party claiming trial court error to provide an adequate record on appeal to demonstrate error. Plaintiffs ignored this issue in their reply brief, which was filed about two months after the District's. We agree with the District that under *Cobb,* this argument cannot be further considered on appeal. "Appellate review is limited to matters appearing in the record before us, and we cannot base our review of errors upon statements of counsel which are unsupported by that record." *D.C. Transit System, Inc. v. Milton,* 250 A.2d 549, 550 (D.C.1969); *see also* D.C.App.R. 28(e) (references in brief to parts of record must refer to pages where such parts appear).

■ Second, plaintiffs argue that they are prevailing parties with respect to the Fifth Amendment claims that were settled in the spring of 1992, and therefore are entitled

to attorney's fees at least for those claims. As we noted in *Jerry M., supra,* a plaintiff who "succeeds in obtaining relief by way of a settlement agreement or consent decree" may be a prevailing party.[19] 580 A.2d at 1274; *see also Maher, supra,* 448 U.S. at 129, 100 S.Ct. at 2574. The fee petition for Grantland specifically mentions the clients who settled their Fifth Amendment claims. In the order awarding fees, the trial court rejected a claim by the District that the parties who settled their claims were not prevailing parties. However, in the very next sentence, the court makes the contradictory statement that fees are recoverable only with respect to the efforts to obtain a probable cause hearing, which would exclude recovery for any of the settled claims. We are thus unable to tell from the record whether the fees were in fact awarded in part for the settled claims and if so, how much of the fees should be allocated to those claims. We must remand to allow the trial court to address this matter further.

## B.

■ Plaintiffs also argue that the trial court erred in denying fees on the unsuccessful constitutional claims, because these claims were related to the successful claims, and that any fee awarded should be enhanced because of the delay in payment. However, these arguments were never raised before the trial court. In the petition for fees, plaintiffs stated that they sought an award for time spent on the Fourth Amendment and the Fifth Amendment settled claims only. Nor did the plaintiffs make any argument in their fee petition to the trial court regarding an enhancement for a delay in payment. This litigation commenced in 1987 and the fee petition was filed in late 1992. Therefore, the plaintiffs had an opportunity to raise any arguments about a delay in payment to the trial court. Following standard appellate practice, we decline to address either of these issues raised for the first time

19. It is presumably possible that a settlement may be so meager compared to the value of a plaintiff's claim that the plaintiff may not have "prevailed." In other words, a governmental body may decide to settle a suit to avoid the cost of litigation, even if it believes that the plaintiff would lose at trial.

on appeal. *See Hessey v. Burden,* 615 A.2d 562, 581 (D.C.1992).[20]

## V.

In sum, we hold on the District's appeal that the trial court erred when it found plaintiffs to be prevailing parties and when it awarded an enhancement for contingency. The attorney's fee award is thus vacated to the extent that it awards attorney's fees for efforts expended on the Fourth Amendment claim. We reject plaintiffs' arguments on the cross-appeal with the exception of a possible award of attorney's fees to cover the settled claims. We remand for further consideration of the attorney's fee award in that respect.

*So ordered.*

WAGNER, Chief Judge, dissenting:

In my view, plaintiff succeeded on a " 'significant issue in litigation which achieve[d] some of the benefit [she] sought in bringing suit;' " therefore, she is a prevailing party within the meaning of the Civil Rights Attorney's Fees Award Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988 and may be awarded attorney fees thereunder. *Texas Teachers Ass'n. v. Garland School Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *accord, Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). There is no disagreement among the panel about the general rule which governs whether a party is entitled to attorney's fees under § 1988. What seems to divide us is the difficult problem of determining when a party fairly may be said to have prevailed on a claim for declaratory judgment for purposes

of shifting counsel fees to the opposing party under the controlling precedents. Although this is a close question, plaintiffs crossed that threshold, in my opinion.

Plaintiff filed a complaint for a declaratory judgment that she was entitled to a prompt hearing to establish probable cause for the seizure of her property, among other things, when the government takes it pursuant to D.C.Code § 33–552 (1988).[1] The trial court observed that from the time of the seizure until the filing of a libel under § 33–552, "there was no reasonably accessible procedure for protecting against unreasonable seizures." Not until after plaintiffs had filed these actions did the government initiate proceedings under § 33–552. The government took the position that plaintiff was afforded adequate protection by the opportunity for a hearing once it initiated a libel, which could be brought within a one-year statute of limitations period.[2] The trial court determined that "some method must be provided for determining whether probable cause exists to retain property during a period when there is otherwise no involvement by any court." The court ruled that

> any particular seizure and detention of property are subject to the Fourth Amendment requirement of reasonableness as determined in a nonadversary judicial review. A warrant need not be obtained prior to the seizure of property, but at a minimum, claimants from whom property has been seized have a right to a probable cause determination, postseizure at their request.

Pursuant to the court's ruling, Patterson requested and obtained such a hearing.

On these facts, plaintiff should be considered a prevailing party for attorney fee pur-

**20.** For the same reason, we do not address the District's argument, based on *Elmore v. Shuler,* 252 U.S.App.D.C. 45, 47, 787 F.2d 601, 603 (1986), that the failure to explicitly reserve a claim for attorney's fees in the settlement bars any recovery.

**1.** Plaintiff Patterson's automobile was seized when a man to whom she had loaned it was arrested on drug charges. The owner claimed a lack of knowledge or involvement in any crime. *See* D.C.Code § 33–552(a)(4)(B) (property exempt from forfeiture where illicit use is without owner's knowledge or consent).

**2.** This court has held that the one year statute of limitations under D.C.Code § 12–305(5) (1995) for libel actions for forfeiture under § 22–1505(c) (1989) is tolled "during the time period between seizure of the property and judgment in the underlying criminal prosecution." *Ward v. District of Columbia,* 494 A.2d 666, 670 (D.C.1985). Assuming application of this tolling rule to seizures under § 33–552, such a period portends an inordinately lengthy delay without any hearing for any innocent owner whose vehicle is seized.

poses. Plaintiff obtained some of the relief she sought, specifically, a post-seizure probable cause hearing where such a remedy previously had not been recognized. Unlike the party in *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), where prevailing party status was rejected, plaintiff successfully pursued declaratory judgment relief which required the government to make an immediate showing of probable cause instead of awaiting the outcome of the libel action which it filed.[3] In my view, the trial court's ruling on the request for declaratory judgment was more than a mere interlocutory ruling on a *pendente lite* motion respecting whether a party has stated a constitutional claim, which has been rejected as a basis for recovery of attorney fees under § 1988. *See id.* at 760, 107 S.Ct. at 2675. Not only did plaintiff state a constitutional claim, but she was successful in having it disposed of in her favor. The fact that she did not ultimately prevail on her request for return of the car is not dispositive. Such a requirement would seem to sanction the "central issue test" which the Supreme Court rejected in *Texas Teachers Ass'n, supra,* 489 U.S. at 792, 109 S.Ct. at 1493. In *Texas Teachers Ass'n,* the Court pointed out that "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Id.* at 790, 109 S.Ct. at 1492. Pertinent to our review, the court describes a prevailing party as "one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation."[4] *Id* at 791, 109 S.Ct. at 1493. In light of the recognition that *pendente lite* relief may form a basis for an award of attorney fees under § 1988, I cannot agree with the majority that in order to recover, the favorable ruling must "effect a *future* course of conduct toward the plaintiff apart from the litigation itself." (Emphasis added.)

In this case, there was a material alteration in the legal relationship between the parties as a result of the disposition of the declaratory action which entitles plaintiff to prevailing party status. Absent that declaration, the government was at liberty to simply retain appellant's property without any showing of probable cause and to defer any opportunity for the asserted innocent owner to challenge its claim until such time as it chose to file the libel and have the matter litigated. In securing the right to a post-seizure hearing by way of declaratory judgment, plaintiff " 'succeed[ed] on [a] significant issue in litigation which achieve[d] some of the benefit [she] sought in bringing suit.' " *See Hensley, supra,* 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau, supra,* 581 F.2d at 278–79). For these reasons, in my opinion, she is a prevailing party within the meaning of § 1988; therefore, I respectfully dissent.

---

3. It is not clear from the record whether the government filed the libel in response to plaintiff's lawsuit, although the libel was the later-filed action. Such circumstances may form the basis for finding a plaintiff to be a prevailing party. *See Hewitt, supra,* 482 U.S. at 761, 107 S.Ct. at 2676. In *Hewitt,* the Supreme Court stated "in a declaratory judgment action: if the defendant, under pressure of the lawsuit, alters his conduct (or threatened conduct) towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed." *Id.* Here, absent plaintiff's claim for declaratory judgment and for a post-seizure probable cause hearing, the government could have retained plaintiff's property for several years without any showing of probable cause to entitlement or any opportunity for challenge until the libel action was heard.

4. It does not appear that the Supreme Court in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), in reviewing its prior opinions, sought to effect any change in its precedents defining prevailing party for purposes of an award of attorney fees under § 1988. In *Farrar,* the issue before the Court was whether a plaintiff who wins damages in a suit for violation of his civil rights was a prevailing party for purposes of § 1988. The Court held he was because "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113, 113 S.Ct. at 574.