**UNITED STATES, Appellee,**

v.

**Reynaldo Jeremias ORTIZ, Defendant–Appellant.**

**No. 97–1670.**

United States Court of Appeals, First Circuit.

Heard May 5, 1998.

Decided June 12, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied July 14, 1998.

Rafael F. Castro–Lang, by appointment of the Court, for appellant.

Antonio R. Bazán, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, was on brief for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

Defendant Reynaldo Jeremías Ortiz ("Ortiz") appeals his four-count conviction for the illegal possession of narcotics and a firearm which were seized from his residence in Guayama, Puerto Rico while police executed a warrant for his arrest. Ortiz was sentenced to 240 months of imprisonment and 10 years of supervised release for the first two counts and 60 months of concurrent imprisonment and 3 years of concurrent supervised release for the remaining counts.

Ortiz claims that the district court committed two errors. First, he argues that his lawyer provided ineffective counsel by failing to move to suppress the narcotics and firearm evidence. Second, he asserts that he cannot be convicted of possession with intent to distribute drugs within 1,000 feet of a school simply because he possessed such substances in his residence within such a distance from a public middle school. We conclude that neither point is well taken and thus affirm his conviction.

## I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the jury's verdict. *See United States v. Rosen,* 130 F.3d 5, 6 (1st Cir.1997). We conclude that the jury could have found the following facts.

On June 20, 1996, a Puerto Rico judge found probable cause to believe that Ortiz had engaged in a conspiracy to commit murder and issued a warrant for his arrest. On that same date, agents of the Puerto Rico Department of Justice executed the arrest warrant at Ortiz' parents' residence in Guayama, Puerto Rico, which was located approximately 150 feet from the Genaro Cautiño Public Middle School. Ortiz lived in a small house, approximately 10 feet wide by 10 feet long, behind the main residence. The agents knocked on his door and identified themselves as police. When the defendant opened the door, the arrest team physically restrained the suspect on his bed and handcuffed him.

Next to the bed, agents found a small plastic bag containing vials of what was later discovered to be cocaine base, commonly known as crack cocaine. One of the agents searched a dresser, which was to the left hand-side of the bed, and found a pistol and a bag of cocaine in the first drawer. The gun was a nickel-plated Smith and Wesson pistol with 15 rounds of ammunition in the magazine and a bullet in the chamber. Its serial numbers had been removed. The agent also searched a plastic shopping bag on top of the dresser, and discovered additional vials of crack cocaine.

The weapon and narcotics evidence was the basis of a four-count federal indictment against Ortiz. Counts One and Two charged Ortiz with possession with intent to distribute varying amounts of narcotics within 1,000 feet of a public school in violation of 21 U.S.C. §§ 841(a) and 860(a). Counts Three and Four, respectively, charged appellant

with the felonious possession of a firearm in violation of 18 U.S.C. § 922(g), and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). He was tried and convicted on all counts. Ortiz appeals.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

 Ortiz alleges he received ineffective assistance of counsel because his trial lawyer failed to file a motion to suppress the weapon and narcotics evidence despite the defendant's specific request that the attorney do so. We do not ordinarily consider ineffective assistance of counsel claims on direct appeal. *See United States v. Martinez–Martinez*, 69 F.3d 1215, 1225 (1st Cir.1995). However, "where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim, an appellate court may dispense with the usual praxis and determine the merits of such a contention on direct appeal." *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991).

 Ortiz' case falls within this exception. The record reflects that the appellant, on several occasions, requested that the district court dismiss his counsel and appoint another attorney to represent him due to the defense attorney's failure to file a motion to suppress the narcotics and firearm evidence. In two instances, Ortiz directly addressed the district court regarding this issue. On February 3, 1997, the date of the jury trial, he stated to the court, "I want to be assigned another attorney to represent me. . . . I have asked for [my lawyer] to file some motions that he has refused to file. . . ." On April 30, 1997, the date set for sentencing, Ortiz again complained of his attorney's failure to pursue what the appellant viewed as his only defense.

Our review of the record shows that, on both occasions, the district court refused to dismiss defense counsel because his attorney had determined that "a motion to suppress would be frivolous, under the present state of the law." Relying substantially on *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23

L.Ed.2d 685 (1969), defense counsel determined that the agents had conducted a valid search of Ortiz' premises incident to a lawful arrest. Thus, appellant's attorney made a conscious decision not to file the motion based on his legal research. Neither party suggests that we need to engage in further factfinding. *Cf. Natanel*, 938 F.2d at 309 (reaching ineffective assistance claim where counsel's alleged omission was straightforward and additional factfinding was not required). Under these circumstances, we find that the record is sufficiently developed to entertain Ortiz' ineffective assistance claim.

 The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on his claim, Ortiz must show that his attorney's performance not only was deficient, but also prejudiced his defense. *See id.* at 687, 104 S.Ct. 2052. We hold that appellant's counsel's conduct was within the "wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. In applying the performance standard, "we examine what counsel 'knew, or should have known, at the time his tactical choices were made and implemented.'" *United States v. Georgacarakos*, 988 F.2d 1289, 1298 (1st Cir.1993) (citing *Natanel*, 938 F.2d at 309). Our analysis, then, turns on whether, in his decision to forego filing the suppression motion, defense counsel's reliance on *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), was so misplaced as to constitute deficient performance.

In *Chimel*, three California police officers executed an arrest warrant for a burglary suspect, Ted Steven Chimel, at the suspect's home. Over Chimel's objections, the officers searched his entire three-bedroom house, and seized numerous items, which were later admitted into evidence against the defendant. The entire search took approximately 45 minutes to an hour to complete. The Supreme Court reversed Chimel's conviction, holding that the search of the defendant's entire house unreasonably extended beyond the defendant's person and area from which he might have obtained either a weapon or

destroyed evidentiary items. *See id.* at 762–63, 89 S.Ct. 2034. The *Chimel* court noted, however, that "[t]here is ample justification [ ] for a search of the arrestee's person and the area 'within his immediate control'—construing the phrase to mean the area from which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. 2034.

In the instant case, Ortiz was detained within the confines of a room, which was no larger than 10–feet wide by 10–feet long. In such a small space, items on top of and inside Ortiz' chest of drawers as well as next to his bed were all within the suspect's grab area. Moreover, it is important to note that the agents were executing an arrest warrant for a violent crime, conspiracy to murder. In our view, it was reasonable for the agents to conduct a protective sweep of the room, and *Chimel* appears to support that conclusion. Thus, appellant's counsel had a legitimate basis, in light of *Chimel,* for not filing the suppression motion.

We are, of course, addressing an ineffective-assistance-of-counsel claim rather than deciding whether, as a matter of law, Puerto Rico police conducted a valid search incident to a lawful arrest. Our scrutiny of counsel's performance must be "highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We find that counsel's conduct was well within the acceptable range of reasonable professional assistance. The defense attorney decided against filing a motion he reasonably believed would be of no benefit to his client. Accordingly, we rule that Ortiz' ineffective assistance claim is without merit.

### B. Schoolyard Statute

■ Ortiz argues that the trial evidence failed to support his conviction under 21 U.S.C. §§ 841(a)(1) and 860(a) for possession of a controlled substance with intent to distribute within 1,000 feet of a public school. Section 860(a), commonly known as the schoolyard provision of the federal drug laws, provides enhanced penalties for:

> Any person who violates section 841(a)(1) or section 856 . . . by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or

within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school. . . .

21 U.S.C. § 860(a). According to Ortiz, the statute requires proof that the defendant intended to distribute or that he actually distributed narcotics within 1,000 feet of the middle school located near his parents' residence. Since the government presented no evidence that Ortiz had such an intent, appellant asserts that we must reverse his conviction on the first two counts. We engage in *de novo* review of questions of law. *United States v. Fernandez,* 121 F.3d 777, 778 (1st Cir.1997).

■ While this court has yet to address the issue presented here, three other courts of appeals have held that the enhanced penalty under § 860(a) applies to a defendant who with intent to distribute possesses narcotics in a school zone even if he or she intends to distribute the drugs there or elsewhere. *See United States v. McDonald,* 991 F.2d 866, 868–70 (D.C.Cir.1993); *United States v. Rodriguez,* 961 F.2d 1089, 1092–95 (3d Cir.1992); *United States v. Wake,* 948 F.2d 1422, 1431–33 (5th Cir.1991). We agree with our sister circuits.

The language of § 860(a) supports the conclusion that the statute punishes drug possession with intent to distribute near a school, whether or not the intended target for distribution is within the area surrounding the school. As both the Third and District of Columbia Circuits have noted, "[the] provision applies to three types of criminal conduct: distributing drugs, possessing drugs with the intent to distribute, and manufacturing drugs." *Rodriguez,* 961 F.2d at 1092; *see also McDonald,* 991 F.2d at 869. Clearly, § 860(a) requires the actus reus for each offense, i.e., distributing drugs, possessing drugs with the intent to distribute, and manufacturing drugs, to occur within 1,000 feet of a school. Since the actus reus for possession with intent to distribute is possession, "it follows that possession of the drugs, not the intended location for distribution, must be located within 1,000 feet of a school." *See* 961 F.2d at 1092.

Ortiz cites decisions in several district court cases to support his contention that the provision reaches only those who intend to distribute narcotics within a school zone. *See United States v. Testa,* 768 F.Supp. 221, 222–23 (N.D.Ill.1991); *United States v. Coates,* 739 F.Supp. 146, 152–53 (S.D.N.Y. 1990); *United States v. Liranzo,* 729 F.Supp. 1012, 1013–14 (S.D.N.Y.1990). The *Liranzo* court argues that rules of grammar require that "within one thousand feet" modify "with intent to distribute" rather than "possessing." *See* 729 F.Supp. at 1014. According to the court, if Congress had intended a different meaning, § 860(a) would have read: " 'possessing, within one thousand feet of a school, with intent to distribute a controlled substance....' " *Id.* However, as the Third Circuit aptly observes, the geographic element modifies "distributing" and "manufacturing" as well as "possessing with intent to distribute." *See* 961 F.2d at 1093. Thus, if Congress had drafted the provision as the *Liranzo* court suggests, it would have had to repeat the "within one thousand feet" language two more times after "distributing" and "manufacturing." *See id.* "Economical legislative drafting dictates that such awkward repetition be avoided if at all possible." *Id.* Therefore, we disagree with the *Liranzo* court's interpretation.

The facts of the three district court cases cited by Ortiz strongly suggest that the defendants in those cases did not intend to distribute drugs within a school zone and that the existence of drugs within the zone was the product only of unlucky circumstances. *See Testa,* 768 F.Supp. at 222–23 (drugs merely stored in stash house near public high school); *Coates,* 739 F.Supp. at 153 (possession of cocaine on board a train at train station located close to technical school); *Liranzo,* 729 F.Supp. at 1013 (drug possession at bus terminal located within 1,000 feet of private elementary school). Accordingly, these courts argue that, if § 860(a) were read to require only that the place of possession be within a school zone, regardless of the place of intended distribution, the statute would unfairly sweep into its ambit cases involving no increased risk to students.

However, "[n]o matter how interpreted, the coverage of the schoolyard provision would not correspond precisely with the class of cases involving increased risk to students." *Rodriguez,* 961 F.2d at 1094. If we require proof of intent to distribute only within the school zone, as these district courts did, the statute would exclude many cases where the presence of drugs, in fact, increased the risk of harm to students. In view of the danger that the mere presence of drugs near a school presents, the district courts' interpretation would provide an escape-hatch for a defendant when, as here, the government is unable to establish precisely where the drugs were meant to be distributed, thereby defeating the intent of Congress. In many such cases, school zone distribution may even be intended but proving this may be difficult. Certainly, the mere existence of a large quantity of drugs in an area increases the possibility of gang warfare and gunfire and other drug-related violence in that vicinity. *See id.* Moreover, the interpretation espoused by these district court cases is vulnerable to other imprecisions as well. We can well imagine a situation where a defendant intends to distribute drugs within a school zone, but at that time, school is no longer in session. *See* 991 F.2d at 870. In such a circumstance, the district courts' interpretation would also sweep into its net defendants who did not pose any threat to students. As the Court of Appeals for the District of Columbia notes:

> Legislatures undoubtedly estimate the malignity of an offense, not merely by assessing the harm produced by a single act, but by considering the general alarm and anxiety offenses of this sort can be expected to cause.... [P]articular instances in which no greater fear or insecurity could arise from the crime's proximity to a school thus fail to take into account the generalities on which § 860 quite properly rests.

*Id.* Consequently, we find the district court rulings discussed above to be unpersuasive.

■ Ortiz also contends that the rule of lenity mandates that we adopt his interpretation of the provision. While Ortiz' interpretation of § 860(a) is arguably plausible, "it is

not cogent for the reasons we have given. Whatever uncertainty of meaning exists, it is far from 'grievous,' an essential condition for applying the canon." *McDonald*, 991 F.2d at 870–71 (citing *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)). Finally, the appellant claims that, in his case, where the possession of narcotics near a schoolyard was purely coincidental, the enhancement under the provision violates the Eighth Amendment prohibition against penalties that are grossly disproportionate to the crime. We see no merit to this claim. "[T]he determination of sentences is primarily a legislative prerogative." *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir.1997). Thus, successful challenges to the proportionality of punishments are "exceedingly rare." *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Here, Ortiz' punishment under § 860(a) was not so grossly disproportionate as to violate the Eighth Amendment.

### III. CONCLUSION

For the foregoing reasons, we *affirm* Ortiz' conviction on all counts.