Anthony JEFFREY, Appellant,

v.

**UNITED STATES, Appellee.**

**Nos. 01–CF–932, 04–CO–252.**

District of Columbia Court of Appeals.

Argued May 3, 2005.

Decided Feb. 16, 2006.

Thomas D. Engle, Indianapolis, IN, appointed by the court, for appellant.

Joycelyn S. Ballantine, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman, and Diane G. Lucas, Assistant United States Attorney, were on the brief, for appellee.

Before WASHINGTON,[1] Chief Judge, and REID, Associate Judge, and TERRY,[2] Senior Judge.

### AMENDED OPINION [3]

WASHINGTON, Chief Judge.

After a jury trial, appellant Anthony Jeffrey ("Jeffrey") was convicted of carrying a pistol without a license ("CPWL") in a gun-free zone,[4] possession of an unregistered firearm,[5] and possession of ammunition.[6] On appeal, Jeffrey contends that:

1. Judge Washington was an Associate Judge of this court at the time of argument. His status changed to Chief Judge on August 6, 2005.

2. Judge Terry was an Associate Judge of this at the time of argument. His status changed to Senior Judge on February 1, 2006.

3. The opinion previously issued in this matter on June 30, 2005, and published at 878 A.2d 1189, was vacated by an order filed February 16, 2006, pursuant to appellant's Petition for Rehearing, which was filed July 14, 2005.

4. In violation of D.C.Code §§ 22–3202(a), –3202.1 (1981), recodified at D.C.Code §§ 22–4502(a), –4502.01 (2001).

5. In violation of D.C.Code § 6–2311(a) (1981), recodified at D.C.Code § 7–2502.01(a) (2001).

6. In violation of D.C.Code § 6–2361(3) (1981), recodified at D.C.Code § 7–2506.01(3) (2001).

(1) the trial court erred when it denied his § 23–110 motion, or in the alternative, that this court should address his ineffective assistance claim under the common law writ of *coram nobis;* (2) the trial court erred when it refused to hold a hearing on his § 23–110 motion or compel trial counsel to cooperate with his appellate counsel; and (3) the evidence was insufficient to support his enhanced conviction of carrying a pistol without a license in a gun-free zone. We affirm.

## I.

As Jeffrey states in his brief on appeal, "[m]ost of the evidence at trial was not contested." The government's evidence showed that, at about 7:30 p.m. on August 14, 1999, Metropolitan Police Lieutenants Dianne Groomes and Edward Delgado were on patrol near the alley behind the 1200 block of Neal Street, Northeast. The officers had received complaints about the alley being used for drug deals and prostitution. According to the testimony, on the other side of the 1200 block of Neal Street, Northeast "is Wheatley Elementary School and the day care center and there is a playground area and the parking lot." As the officers approached the alley, they noticed a car blocking the alley. The officers noticed two people, one of whom was Jeffrey, in the car reclining back in their seats.

Lieutenant Delgado saw Jeffrey turn around to look at the officers from the front passenger's seat and then bend down toward the floorboard of the car. When the officers got out of their car to investigate, both officers also detected the smell of marijuana coming from the car. At this point, Jeffrey jumped out of the car and started walking to the front of the car. Lieutenant Groomes tried to block him, and Jeffrey did "kind of like a little skir-

mish-type of a thing, kind of what we call on the street like a faking me out."

Lieutenant Delgado pulled Jeffrey onto the trunk of the car and put him in the frisk position. Because the car door was left ajar, Lieutenant Groomes noticed a barrel of a gun protruding from underneath the passenger's seat. The officers told the female passenger to stay seated in the car. According to Lieutenant Groomes, Jeffrey spontaneously told the officers that the female passenger had nothing to do with it, that it was his car and that he had just bought it. Lieutenant Delgado testified that Jeffrey also admitted that "[w]hatever is in the car is mine."

A crime scene search technician responded to the scene, saw the gun protruding from underneath the car seat, and took photographs. The technician also measured the distance from the location of the gun to the property line near the fence of Wheatley Elementary School, and testified at trial that the distance was 151 feet and 7 inches.

Jeffrey presented no evidence at trial. After deliberations, a jury found Jeffrey guilty of all counts. Jeffrey was sentenced on June 22, 2001, to multiple sentences of two years supervised probation, all to run concurrently. On May 17, 2002, Jeffrey's probation was revoked and he was sentenced to one to three months' incarceration.

## II.

### A. *Jeffrey's Section 23–110 Motion*

On October 16, 2002, Jeffrey filed an Ex Parte Motion to Compel Cooperation of Trial Counsel, which the trial court denied on November 4, 2002. The motion stated that cooperation of trial counsel was necessary to determine whether an ineffective assistance of counsel motion would be appropriate. On February 11, 2003, Jef-

frey filed a Motion to Vacate Sentence pursuant to D.C.Code § 23–110 (2001) alleging ineffective assistance of trial counsel. Specifically, Jeffrey argued that trial counsel was ineffective because he should have put forth evidence showing that Jeffrey did not own the vehicle, and that, because of this, Jeffrey had no knowledge of the gun underneath the seat. Jeffrey contended that this evidence was crucial to his defense, and that, had his attorney established such facts, the outcome of his trial would have been different.

The trial court denied Jeffrey's motion on March 11, 2004. On appeal, Jeffrey challenges the trial court's denial of his § 23–110 motion on the merits, the trial court's denial of his motion without a hearing, and the trial court's denial of his motion to compel trial counsel to cooperate with appellate counsel for purposes of the § 23–110 motion.

The government opposed Jeffrey's § 23–110 motion arguing that Jeffrey had failed to show either deficient performance or prejudice from his trial counsel's alleged ineffectiveness. The government also argued, however, that because Jeffrey was no longer "in custody," the § 23–110 motion was not properly before the court.

On appeal, the government again argues that Jeffrey was not "in custody" at the time he filed his motion to vacate sentence under § 23–110, and thus, the motion was not properly before the trial court. The government points out that on May 17, 2002, Jeffrey was sentenced to one to three months incarceration and that, by February 11, 2003, when Jeffrey filed his motion, he had already served his sentence.

■■■ Upon a review of the record, we agree that the trial court lacked jurisdiction to hear Jeffrey's § 23–110 motion and, thus, his challenge to the trial court's ruling was not properly before the Superi-

or Court. Although this precise argument was not made to the trial court, "jurisdictional challenges may be raised at any time." *Friendship Hosp. for Animals, Inc. v. District of Columbia,* 698 A.2d 1003, 1006 (D.C.1997). Motions made pursuant to § 23–110, under which Jeffrey sought relief, may only be made by a "prisoner *in custody* under sentence of the Superior Court." D.C.Code § 23–110(a) (2001) (emphasis added). Moreover, we have expressly held that "[t]o meet the in-custody requirement of § 23–110, a prisoner must currently be serving or detained upon a sentence imposed by the Superior Court." *Thomas v. United States,* 766 A.2d 50, 51 (D.C.2001). Because Jeffrey had already served his sentence, and therefore was not detained or in custody at the time he filed his § 23–110 motion, the motion was not properly before the trial court. Because the trial court lacked jurisdiction to hear Jeffrey's ineffective assistance of counsel claim, we need not address whether the court erred substantively in denying the motion or whether it erred in refusing to hold a hearing on the matter. Furthermore, we need not address Jeffrey's claim that the court erred in denying his motion to compel, as this motion was directly related to his investigation on his § 23–110 motion.

■■ While the appellant could not bring his § 23–110 claim in the Superior Court because he did not meet the custody requirement under the statute, this court is not precluded from reviewing the appellant's ineffective assistance claim as part of a direct appeal, as long as that review is confined to the record. *See Mack v. United States,* 570 A.2d 777, 785–86 (D.C.1990) (noting that when an ineffective assistance claim is brought as part of a direct appeal, "[a]ny assessment [the court] could make of counsel's performance would therefore necessarily have to be based exclusively on

the trial record"). In order to succeed on a claim of ineffective assistance of counsel, the appellant must satisfy a two-pronged analysis:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[A] movant must show not only that trial counsel's performance was deficient under prevailing professional norms, but also that but for trial counsel's error there is a reasonable probability that the defendant would have been found not guilty." *Smith v. United States,* 608 A.2d 129, 131 (D.C. 1992) (citing *Strickland, supra,* 466 U.S. at 693, 694, 104 S.Ct. 2052).

"In assessing counsel's performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy.'" *Smith, supra,* 686 A.2d at 547 (quoting *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. 2052). In analyzing a claim of ineffective assistance of counsel, "[j]udicial scrutiny of counsel's performance must be deferential." *Lane v. United States,* 737 A.2d 541, 549 (D.C.1999) (citing *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. 2052). "In considering whether a defendant has been prejudiced by counsel's deficiencies, the question is 'whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Smith, supra,* 686 A.2d at 547 (citing *Strickland, supra,* 466 U.S. at 686, 104 S.Ct. 2052). "[I]t is sometimes efficacious to address the prejudice prong first since without prejudice there can be no ineffective assistance." *Griffin v. United States,* 598 A.2d 1174, 1176 (D.C. 1991).

■ The government's case against Jeffrey was strong. An officer of the Metropolitan Police Department testified about the gun's location under the appellant's seat in the car and about the appellant's brief attempts to evade police when they approached the vehicle. The same officer also testified that the appellant spontaneously uttered that the car belonged to him and that anything in the car was his and not his female companion's. The jury also heard the testimony of the Prince George's County Police Detective who took a statement from the appellant the evening of his arrest. In that statement, the appellant admitted purchasing a gun after an acquaintance of his was shot because he felt that he was in danger.

Appellant argues that his trial counsel could have introduced ownership evidence of the vehicle in order to impeach the testimony of the officer who claimed that the appellant asserted his ownership to the car, and that this might have changed the outcome of the verdict. We disagree. The statements attributed to the appellant can easily be interpreted as an attempt to prevent his companion from being detained and not as an actual attempt to establish ownership of the vehicle. Even if appellant's trial counsel had offered the vehicle ownership evidence, it is unlikely that it would have overcome the government's evidence of guilt. As the appellant cannot show with any certainty that his

trial counsel's alleged omissions substantially swayed the outcome of his case, he cannot demonstrate prejudice warranting a new trial.

### B. Sufficiency of the Evidence

We now turn to Jeffrey's claims regarding his conviction for CPWL in a gun-free zone. Jeffrey argues that the trial court erred in allowing the jury to consider whether he carried a pistol without a license in a gun-free zone. The D.C.Code provides for an enhanced penalty to any person carrying a gun illegally within a gun-free zone, which includes: "[a]ll areas within 1000 feet of a public or private day care center, elementary school, vocational school, secondary school ...." § 22–3202.1 (1981). Jeffrey contends that, because the evidence at trial showed the distance of 151 feet 7 inches to be from the property line of the school, not the actual building itself, to the location of the gun in the car, the trial court erred in submitting that element to the jury. According to his interpretation of D.C.Code § 22–3202.1 (1981), a gun-free zone is that area within 1000 feet of an elementary school building itself, not within 1000 feet of the school grounds or the school's real property. Because "there was no testimony regarding the distance of Wheatley School from the property line or the distance between the gun and Wheatley School," Jeffrey contends, the elements of the statute were not met.

Because Jeffrey failed to raise this specific claim in the trial court, we would ordinarily review it for plain error. *See Williams v. United States,* 858 A.2d 984, 990 (D.C.2004). Due to the importance of the statutory interpretation issue, however, we have decided to review the case *de novo.* Our first step when interpreting a statute is to look at the language of the statute. *See National Geographic*

*Soc'y v. District of Columbia Dep't of Empl. Servs.,* 721 A.2d 618, 620 (D.C.1998). We are required to give effect to a statute's plain meaning if the words are clear and unambiguous. *See Office of People's Counsel v. Public Serv. Comm'n,* 477 A.2d 1079, 1083 (D.C.1984). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983). Furthermore, "in examining the statutory language, it is axiomatic that 'the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.' " *Id.* (quoting *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979)).

" 'The literal words of [a] statute, however, are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice.' " *Columbia Plaza Tenants' Ass'n v. Columbia Plaza L.P.,* 869 A.2d 329, 332 (D.C.2005) (quoting *Boyle v. Giral,* 820 A.2d 561, 568 (D.C.2003)). We must also be mindful that our interpretation is not at variance with the policy of the legislation as a whole, "requiring that we remain more faithful to the purpose than the word." *Id.* (internal quotation marks omitted). Toward this end, in certain cases, we also consult the legislative history of a statute. *See Abadie v. District of Columbia Contract Appeals Bd.,* 843 A.2d 738, 742 (D.C.2004).

Upon a review of the statute, its legislative history, and intended purpose, we hold that a gun-free zone as defined in D.C.Code § 22–3202.1 (1981), recodified at D.C.Code § 22–4502.01 (2001), is the zone within 1000 feet of the grounds and real

property of a school, not just the building itself.

The text of the gun-free zone statute states:

(a) All areas within 1000 feet of a public or private day care center, elementary school, vocational school, secondary school, college, junior college, or university, or any public swimming pool, playground, video arcade, or youth center, or an event sponsored by any of the above entities shall be declared a gun-free zone.

(b) Any person illegally carrying a gun within a gun-free zone shall be punished by a fine up to twice that otherwise authorized to be imposed, by a term of imprisonment up to twice that otherwise authorized to be imposed, or both.

D.C.Code § 22–3202.1 (1981).

Here, although the statute does not explicitly state whether the grounds and real property of the buildings are included in the gun-free zone, it is evident that the statute is intended to protect children from being exposed to criminal activity. The legislative history of the statute makes this point clear. The Committee for the Judiciary of the Council of the District of Columbia stated that the legislation was prompted by gun violence continuing in places "where children abound." JAMES E. NATHANSON, BILL 10–265, THE "YOUTH FACILITIES FIREARM PROHIBITION AMENDMENT ACT OF 1994," COMM. ON THE JUDICIARY, at 2 (1994). "It is the intent of the bill to cover most places where children are intended to congregate." *Id.*

Jeffrey suggests that we read the statute to mean that a gun-free zone must be measured from the actual building itself to the locus of the gun. Were we to adopt Jeffrey's interpretation, however, we would lose sight of the legislative purpose

and policy behind this provision. It is difficult to imagine why the legislature would consider only the area within 1000 feet of a school building to be a gun-free zone, but exclude the school grounds, upon which children are just as likely to linger and "abound."

Such an interpretation is also consistent with our cases interpreting the District drug-free zone statute, which is almost identical to the gun-free zone statute. *See Boddie v. United States,* 865 A.2d 544, 549 (D.C.2005); *compare* D.C.Code § 33–547.1 (1997 Supp.) *with* § 22–3202.1 (1981). Like the gun-free zone statute, the text of the drug-free zone statute does not expressly specify whether the zone includes the area within 1000 feet of the *grounds* of a school. In *Boddie,* we determined that because "the critical controlling language in the District's [drug-free zone] statute is virtually identical to that in the federal law," the statute should be interpreted in the same way the federal circuits had interpreted it. 865 A.2d at 553. Similarly, it is appropriate for us to take guidance from the federal gun-free zone statute in interpreting our own version. Under the comparable federal statute, a "school zone" is defined as the area: (1) "in, or on the grounds of, a public, parochial or private school"; or (2) "within a distance of 1,000 feet *from the grounds of* a public, private or parochial school." 18 U.S.C. § 921(25) (emphasis added). We are satisfied that our interpretation of the D.C. gun-free zone statute is consistent with our federal counterpart.

Our interpretation is also consistent with our opinion in *Goodson v. United States,* 760 A.2d 551 (D.C.2000), in which we first addressed how distance is computed for the 1000–foot requirement in our drug-free zone statute.[7] We held that the evidence was insufficient to sustain appellant's conviction based on the fact that the *end point*

---

7. *See* D.C.Code § 33–547.1 (1997 Supp.).

(locus of the drug offense) of the measurement was incorrect. In so holding, however, we stated that: "we agree with the D.C. Circuit in interpreting the 1000–foot requirement 'to mean the straight-line footage between the *closest point within the real property* of the school and the locus of the drug offense.'" *Goodson, supra,* 760 A.2d at 554 (quoting *United States v. Applewhite,* 315 U.S.App. D.C. 222, 226, 72 F.3d 140, 144 (1995)) (emphasis added).

 Having found that a gun-free zone includes the area within 1000 feet of the grounds and real property of a school and not just the building itself, we now turn to whether the evidence at trial was sufficient to sustain Jeffrey's conviction. In this regard, we review a claim of insufficiency of evidence "in the light most favorable to the government, recognizing the province of the trier of fact to weigh the evidence, determine the credibility of the witnesses and to draw reasonable inferences from the testimony." *Dickerson v. United States,* 650 A.2d 680, 683 (D.C. 1994). Because the undisputed evidence at trial showed that Jeffrey possessed the gun in this case 151 feet and 7 inches from the property line of Wheatley Elementary School, we find the evidence sufficient to sustain his conviction of CPWL in a gun-free zone.

Accordingly, we affirm the judgment of the trial court.[8]

*So ordered.*

## ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing, and the opposition thereto, it is

ORDERED that the petition for rehearing is granted to the extent that this court's opinion in this matter filed June 30, 2005, and reported at 878 A.2d 1189, is hereby vacated and an amended opinion is issued on this date. It is

FURTHER ORDERED that the petition for rehearing is otherwise denied.

Judge WASHINGTON was an Associate Judge of this court at the time of decision. His status changed to Chief Judge on August 6, 2005.

Judge TERRY was an Associate Judge of this court at the time of decision. His status changed to Senior Judge on February 1, 2006.

---

8. Jeffrey argues in the alternative that the trial court erred in instructing the jury that the government must prove that Jeffrey "carried the pistol on or about or within 1,000 feet of the *real property* of a public school." (Emphasis added). Given our decision in this case, we find that the trial court correctly instructed the jury.